**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
GREGORY JELOUDOV,

                                  Plaintiff,

           -against-

TIME WARNER CABLE INC., TIME WARNER NY CABLE
LLC, HELENA SOBRINO, *Individually*, and
JAMES HOFFMAN, *Individually*,

                             Defendants.
-------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

       Plaintiff, GREGORY JELOUDOV, by his attorneys, PHILLIPS & PHILLIPS,

ATTORNEYS AT LAW, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1.   Plaintiff brings this action charging that Defendants violated the <u>Americans with</u>

     <u>Disabilities Act of 1990</u>, 42 U.S.C. § 12101, et seq. ("ADA") and the <u>New York City</u>

     <u>Human Rights Law, Administrative Code § 8-107</u> et seq. ("NYCHRL"), seeking to

     recover lost wages, emotional distress, punitive damages, reasonable attorney's fees and

     costs as a result of being discriminated against on the basis his disability and retaliated

     against for requesting a reasonable accommodation. **Plaintiff JELOUDOV is disabled**

     **with Post Traumatic Stress Disorder ("PTSD") caused by a Military Sexual Trauma**

     **("MST").**

## JURISDICTION AND VENUE

2.   Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f) (3), 29 U.S.C. § 626(c),

and 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendants' residency within the County of New York, State of New York, within the Southern District of New York.

## PROCEDURAL PREREQUISITES

4.  On or about October 25, 2010, Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

5.  Plaintiff received a Notice of Right to Sue from the EEOC, dated May 9, 2011, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

6.  This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

7.  Plaintiff GREGORY JELOUDOV ("JELOUDOV") is a resident of the County of Brooklyn (KINGS COUNTY) and State of New York.

8.  **Plaintiff JELOUDOV is disabled with Post Traumatic Stress Disorder ("PTSD") caused by a Military Sexual Trauma ("MST") ALSO WITH LOWER BACK STRAIN AND PATELLOFEMORAL SYNDROME ON BOTH LEGS.**

9.  **Plaintiff JELOUDOV was sexually assaulted while serving in the military.**

10. **Plaintiff JELOUDOV's PTSD AND DEPRESSION substantially limited his major life activities of caring for himself, thinking, concentrating, interacting with others,**

**sleeping, and working.**

11. Defendant TIME WARNER CABLE INC. ("TIME WARNER") is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York.

12. Defendant TIME WARNER's principal place of business is located at 111 Eighth Avenue, 13th Floor, New York, New York 10011.

13. Defendant TIME WARNER NY CABLE, LLC ("TIME WARNER NY") was and is a foreign limited liability company duly authorized and existing by virtue of the laws of the State of New York.

14. Defendant TIME WARNER NY's principal place of business is located at 111 Eighth Avenue, 13th Floor, New York, New York 10011.

15. Defendant TIME WARNER and Defendant TIME WARNER NY have common management, share financial control of both companies, share centralized control of labor relations and share employees.

16. Plaintiff JELOUDOV was, at all times relevant, a full-time employee of Defendant TIME WARNER and Defendant TIME WARNER NY.

17. Defendant HELENA SOBRINO ("SOBRINO"), at all time herein mentioned, was and is an individual residing in the State of New York.

18. Defendant SOBRINO, at all times herein mentioned, was and still is an employee of Defendant TIME WARNER and Defendant TIME WARNER NY.

19. Defendant SOBRINO, at all times herein mentioned, held the position of "Training Supervisor" for Defendant TIME WARNER and Defendant TIME WARNER NY.

20. Defendant SOBRINO, at all times herein mentioned, was Plaintiff's supervisor and had

supervisory authority over Plaintiff.

21. Defendant JAMES HOFFMAN ("HOFFMAN"), at all time herein mentioned, was and is an individual residing in the State of New York.

22. Defendant HOFFMAN, at all times herein mentioned, was and still is an employee of Defendant TIME WARNER and Defendant TIME WARNER NY.

23. Defendant HOFFMAN, at all times herein mentioned, held the position of "Human Resources Manager" for Defendant TIME WARNER and Defendant TIME WARNER NY.

24. Defendant HOFFMAN, at all times herein mentioned, was Plaintiff's supervisor and had supervisory authority over Plaintiff.

25. Defendant TIME WARNER, Defendant TIME WARNER NY, Defendant SOBRINO, and Defendant HOFFMAN are collectively referred to herein as "Defendants."


## MATERIAL FACTS

26. On or about March 17, 2010, Plaintiff JELOUDOV applied for the position of a Russian-speaking "Customer Care Specialist" by submitting his resume to Defendants.

27. On or about July 20, 2010, Plaintiff JELOUDOV was interviewed by Defendants' Human Resources Representative, Michael Winburn, during which Plaintiff JELOUDOV provided Defendants with medical documentation demonstrating that Plaintiff JELOUDOV was diagnosed with, and suffers from, PTSD caused by MST, AND **BACK AND KNEE PAIN.**

28. **Plaintiff JELOUDOV explained to Defendants (Michael Winburn HR Manager, Helena Sobrino, Training Specialist) that as a result of his disabilities, he is**

<u>sometimes required to visit doctors (Dr Anastasia Kucharski MD) and social</u> <u>workers during the workday, and requested that Defendants allow him to continue</u> <u>visiting his doctors and social workers as a reasonable accommodation.  Plaintiff</u> <u>also requested he ocasionally be able to stand-up and take a walk.</u>

29. Shortly thereafter, Plaintiff JELOUDOV had a second interview with Defendants (again to Mr. Winburn and to second HR Managers at Flushing, NY facility Vince Leto-BUT I AM NOT SURE!!), and once again, informed Defendants of his disabilities and requested that he be allowed to go to doctors' appointments and social workers' appointments during working hours.  Plaintiff JELOUDOV received no objections to his requests. **Moreover, JELOUDOV was irrevocably assured by Ms. Shannon Shakespeare (HR Supervisor at Flushing, NY) that modifying schedules will NOT cause any "undue hardship" to the Defendant and no tailor-made training program would be necessary, as the Defendant claimed to be a "veteran-friendly" employer.**

30. On or about September 7, 2010, Plaintiff JELOUDOV received the official job offer from Defendants for the position of "Customer Service Specialist" with a pay rate of $13.50 per hour, which Plaintiff JELOUDOV gladly accepted.

31. On or about September 10, 2010, Plaintiff JELOUDOV began working for Defendants, and on or about September 13, 2010, Defendants dispatched Plaintiff JELOUDOV to Defendants' facility located at 10915 14th Avenue, College Point, New York 11356 to undergo training.

32. On or about September 13, 2010, as Plaintiff JELOUDOV's PTSD and Patellofemoral systems were aggravated, Plaintiff JELOUDOV telephoned Defendants (Mr. Sobrino-Training Specialist and Mr. Shakespeare-HR Manager) and informed them that he would

be approximately twenty (20) minutes late to training.

33. **Upon arrival, Plaintiff JELOUDOV immediately informed Defendant SOBRINO-TRAINING SPECIALIST that in addition to being required to attend doctors' appointments and social workers' appointments, his disability also requires him to occasionally stand up and walk around, and requested that Defendants including Mr. Sobrino the Training Specialist and other supervisor/trainer (whose name is unknown) accommodate him by allowing him to do this.**

34. Plaintiff JELOUDOV received no response from Defendant SOBRINO or anyone else with respect to Plaintiff JELOUDOV's requests, and therefore assumed that Defendants had no objections to his requests for reasonable accommodations.

35. **However, during his employment with Defendants, Plaintiff JELOUDOV was also forced to endure harassment and discrimination solely due to his disability.   From Day 1-September 13th 2010, Plaintiff JELOUDOV was earmarked as a "troublemaker" by Sobrino.**

36. On September 14, 2010, when one of Plaintiff JELOUDOV's co-workers saw him taking psychiatric medications, the co-worker (believed to be Chris Trivino) told Plaintiff JELOUDOV, **"Those are for retards and morons.  If you are retarded, what are you doing here?  You won't last here.**   Plaintiff JELOUDOV was shocked and horrified to hear this discriminatory remark. **Also that morning September 14th 2010 at 8.58am, Plaintiff Jeloudov, was asked to come in to see a supervisor (name unknown) for a "talk" and WAS NOT let go/allowed to clock in until 9.05am, thus unintentionally resulting in "lateness", which was used by his supervisors later to harass and**

**intimidate him.**

37. On or about September 15, 2010, at around 7:52 am, Plaintiff JELOUDOV left Defendant SOBRINO a voicemail, in which he advised her that he was unable to come to work that day, as he was having severe adverse reactions to his medication, and needed to urgently visit the Veteran Affairs Hospital emergency room.

38. The following day, **on or about** September 16, 2010, upon Plaintiff JELOUDOV's arrival at work, he immediately provided Defendant SOBRINO with medical documentation from the Veteran Affairs New York Harbor Healthcare System stating, "Mr. Gregory Jeloudov was here for evaluation and was seen in ER on 9/15/10."

39. Shockingly, Defendant SOBRINO then asked Plaintiff JELOUDOV, **"Are you going to become violent because of your mental disorder, because of those tablets you are taking?"**

40. These discriminatory and illegal comments were greatly exacerbating Plaintiff's PTSD symptoms, causing him severe emotional distress and anxiety, especially since **the harassment was now coming from his supervisors,** who accused him of being late on September 14th and September 16th 2010.

41. Despite having to endure a hostile work environment filled with derogatory remarks, Plaintiff JELOUDOV nonetheless successfully passed several training tests without any issues.

42. On or about September 17, 2010, Plaintiff JELOUDOV informed Defendant SOBRINO that he had two upcoming (2) doctors' appointments, on September 21, 2010 at 2:20 pm and **October 21st at 10.30am at the VA**. Plaintiff JELOUDOV also provided Defendant SOBRINO with medical documentation from the Veteran Affairs Hospital,

confirming the two (2) appointments, and requested permission to attend the appointments as a reasonable accommodation for his disability.

43. As Plaintiff JELOUDOV had still not received any response from Defendant SOBRINO concerning his request, on or about the evening of September 20, 2010, Plaintiff JELOUDOV emailed Defendant SOBRINO, explained again in detail that his disability required him to attend a doctor's appointment the following day at 2:20 pm, and requested that he be allowed to leave work to attend the appointment.

44. Also on or about September 20, 2010, in the same email, Plaintiff JELOUDOV informed Defendant SOBRINO that he had another important doctor's appointment on September 24, 2010 at the Sydney Hillman Psychiatry Center, also connected with his disability.

45. While Defendant SOBRINO never responded to Plaintiff JELOUDOV's requests, on or about September 22, 2010, at approximately 1:15 pm, in front of numerous co-workers, Defendant SOBRINO told Plaintiff JELOUDOV to "pack your stuff and follow me downstairs to Human Resources."

46. At this meeting, Defendant SOBRINO and Defendant HOFFMAN asked Plaintiff JELOUDOV why he keeps asking to step out of the training room and why he is hospitalized so frequently.

47. Plaintiff JELOUDOV replied that, **"I have Post Traumatic Stress Disorder resulting from Military Sexual Trauma."**

48. Defendant HOFFMAN asked Plaintiff JELOUDOV, **"Do you have AIDS,"** to which Plaintiff JELOUDOV replied that he did not.

49. **Defendant HOFFMAN then suddenly terminated Plaintiff JELOUDOV's employment, stating, "You understand that we can't keep people with your**

conditions here," and presented Plaintiff JELOUDOV with a resignation letter to sign.

50. When Plaintiff JELOUDOV refused to sign, Defendant HOFFMAN again stated, **"We are unable to keep someone with PTSD and cannot let you be absent to see your doctors. You are in breach of our policy. We are accepting your resignation, so don't come back here and don't even think about reapplying."**

51. Although Plaintiff JELOUDOV informed Defendants that he had no intention to resign from his position, Defendants wholly ignored Plaintiff JELOUDOV.

52. Defendant HOFFMAN then stood up, and proceeded to aggressively escort Plaintiff JELOUDOV out of the building through the back door.

53. Confused and insulted, later that same day, Plaintiff JELOUDOV sent an email to Defendant SOBRINO, in which he again requested a reason for his sudden termination. Plaintiff JELOUDOV never received any response to his email.

54. Plaintiff felt offended, disturbed, and humiliated by this illegal termination.

55. **Defendants terminated Plaintiff JELOUDOV's employment solely due to Plaintiff's disability and because he requested a reasonable accommodation for his disability.**

56. **But for the fact that Plaintiff JELOUDOV was disabled and had requested a reasonable accommodation for his disability, Defendants would not have terminated his employment.**

57. Defendants failed to provide Plaintiff JELOUDOV with a reasonable accommodation of time off from work to visit doctors and social workers.

58. The above are just some of the acts of discrimination, harassment and retaliation that Plaintiff JELOUDOV experienced when working for Defendants.

59. Plaintiff JELOUDOV's performance was, upon information and belief, above average

during the course of his employment with Defendants.

60. Plaintiff JELOUDOV has been unlawfully discriminated against, humiliated, retaliated against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

61. **Defendants' actions and conduct were intentional and intended to harm Plaintiff JELOUDOV**.

62. As a result of Defendants' actions, Plaintiff JELOUDOV feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of the Defendants' discriminatory treatment of Plaintiff JELOUDOV, he has suffered severe emotional distress and physical ailments.

64. As a result of the acts and conduct complained of herein, Plaintiff JELOUDOV has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

65. As a result of the above, Plaintiff JELOUDOV has been damaged in an amount in excess of the jurisdiction of the Court.

66. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff JELOUDOV demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendant)

67. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

68. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

69. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

70. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

71. As such Plaintiff has been damaged as set forth herein.


## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire

or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

74. Defendants violated the section cited herein as set forth.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The New York City Administrative Code Title 8, §8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person **has opposed any practices** forbidden under this chapter. . ."

77. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

80. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory and unlawful conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. New York City Administrative Code Title 8-107(19) **Interference with protected rights**. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

83. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. New York City Administrative Code Title 8-107(13) **Employer liability** for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon

13

the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    i.  the employee or agent exercised managerial or supervisory responsibility; or

    ii.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    iii.  the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an **independent contractor**, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

84. Defendants violated the section cited herein as set forth.


## **INJURY AND DAMAGES**

85. As a result of the acts and conduct complained of herein, Plaintiff JELOUDOV has

suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

86. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the "NYCHRL"), by discriminating against Plaintiff on the basis of his disability, and then unlawfully terminating her employment in retaliation for requesting a reasonable accommodation for his disability;

B.  Awarding damages to the Plaintiff, retroactive to the date of his discharge for all lost wages and benefits resulting from Defendants' unlawful termination of his employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, NY
      May 23, 2011

                    **PHILLIPS & PHILLIPS,**
                    **ATTORNEYS AT LAW, PLLC**

                    /s/
                    William K. Phillips, Esq. (wp0409)
                    30 Broad Street, 35th Floor
                    New York, NY 10004
                    (212) 587-0760

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Greg Jeloudov<br>1535 Shore Parkway, 3F<br>Brooklyn, NY 11214 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2011-00024 | **Emily F. Halmowitz,**<br>**Investigator** | (212) 336-3759 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Kevin Berry*

**Kevin J. Berry,**
**District Director**

5/9/2011

*(Date Mailed)*

cc: | Jamal M. Dawkins<br>Senior Counsel, Labor<br>Time Warner Cable<br>7820 Crescent Executive Drive<br>Charlotte, NC 28217 | William Phillips<br>Phillips & Phillips<br>30 Broad Street, 35th Floor<br>New York, NY 10004 |

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   **Greg Jeloudov**
    **1535 Shore Parkway, 3F**
    **Brooklyn, NY 11214**

From:   **New York District Office**
    **33 Whitehall Street**
    **5th Floor**
    **New York, NY 10004**

[ ]   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

ENTERED 5/13/11

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2011-00024** | **Emily F. Haimowitz,** <br> **Investigator** | **(212) 336-3759** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Kevin J. Berry,
**District Director**

5/9/2011
*(Date Mailed)*

cc:    **Jamal M. Dawkins**
      **Senior Counsel, Labor**
      **Time Warner Cable**
      **7820 Crescent Executive Drive**
      **Charlotte, NC 28217**

      **William Phillips**
      **Phillips & Phillips**
      **30 Broad Street, 35th Floor**
      **New York, NY 10004**